**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

LYNN R. DAVIDSON,

Plaintiff,

v.

AVON PRODUCTS, INC.,

Defendant.

Civil No. 00-2345 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER ON CROSS SUMMARY JUDGMENT MOTIONS**

---

James Walter Balmer, FALSANI BALMER PETERSON & QUINN, 1200 Alworth Building, 306 Superior Street West, Duluth, MN 55802, for plaintiff.

Michael P. Carey, POWELL GOLDSTEIN FRAZER & MURPHY, 16th Floor, 191 Peachtree Street N.E., Atlanta, GA 30303; and Jerome D. Feriancek, THIBODEAU JOHNSON & FERIANCEK, 302 Superior Street West, Suite 800, Duluth, MN 55802, for defendant.

Plaintiff Lynn Davidson brought this action against her former employer, Avon Products, Inc. ("defendant") challenging defendant's interpretation of a clause in defendant's Long Term Disability Plan ("Plan"). The Plan is governed by ERISA and the challenged provision requires that plaintiff's long-term disability benefits be offset by any additional benefits, such as social security payments. Both parties have moved for summary judgment. For the reasons discussed below, the Court grants defendant's motion for summary judgment, and denies plaintiff's motion.

FILED 3-26-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. 3-26-03
DEPUTY CLERK

## BACKGROUND

Plaintiff was working on February 8, 1994 when she was involved in a serious car accident. She collected uninsured motorist benefits from defendant, and also receives social security benefits. In addition, plaintiff reached a worker's compensation settlement with defendant that provided $96,353.32 as payments for the release of claims for permanent total disability benefits "that otherwise would have been payable periodically over [plaintiff's] lifetime."[1] The settlement sets out plaintiff's life expectancy (408 months), and notes that the lump sum represents $236.16 per month for the next 408 months.

Plaintiff also receives long-term disability benefits pursuant to the long-term disability Plan. The Plan is funded via a trust established by defendant, which in turn is funded by employee contributions. If employee contributions are insufficient, the Plan provides that defendant may make contributions. The Plan explicitly grants defendant discretion to "determine all questions concerning eligibility, elections, contributions, and benefits under the Plan" and to "construe all terms of the Plan, including uncertain terms." The Plan allowed defendant to delegate certain administrative tasks to an Administrative Services Organization—which, at all times relevant to this case, was

[1] The total settlement was for $160,000; the difference was attributed to release of future claims such as psychiatric and pain care, and retraining and rehabilitation; attorneys fees; and permanent partial disability benefits.

Aetna Life Insurance Company ("Aetna").[2] Defendant maintained the right to make final determinations of benefits.

The Plan includes a schedule to calculate monthly benefits for those who have become totally disabled. Monthly benefits are calculated by taking the difference between a base monthly benefit amount (determined as a percentage of the insured's preinjury income—in plaintiff's case that amount is $1,080.39) and other monthly income benefits. The parties do not dispute that plaintiff's social security income, and the worker's compensation lump sum payment must be offset. However, where the payment is a lump sum, such as the worker's compensation benefit here, the Plan does not specify how to allocate that payment. The Plan states only "[a]ny single sum payment and any payments received on a basis other than monthly shall be allocated by the Plan Administrator to monthly periods."

Aetna initially determined that the lump sum worker's compensation payment should be allocated according to the "Benefits Period" — the period of time during which plaintiff is eligible for benefits — in this case, until she is 65. Plaintiff appealed Aetna's decision, and defendant upheld the decision.[3]

[2] Plaintiff's claims against Aetna were dismissed with prejudice on December 9, 2002 [Docket No. 20].

[3] Avon reversed another Aetna decision, but that decision is not at issue in this action.

## ANALYSIS

### I. Standard of Review

ERISA itself does not provide a standard of review, however "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). If the plan confers discretion on the plan administrator, a deferential abuse-of-discretion standard of review applies. *Bounds v. Bell Atlantic Enterprises Flexible Long-Term Disability Plan,* 32 F.3d 337, 339 (8th Cir. 1994); *Luke v. IKON Office Solutions Inc.*, 2002 WL 1835645 (D. Minn. Aug. 1, 2002). Yet another standard, the "sliding scale" approach is used when the Plan contains "explicit discretion-granting language" but the plan participant has presented "material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998).

Plaintiff does not dispute that the Plan confers discretion on the Administrator to interpret Plan provisions. Plaintiff suggests, however, that a less deferential standard should nonetheless apply, because defendant's clear financial interest in the amount of benefits paid out of the plan creates a serious conflict of interest. She also argues that defendant's use of one set of numbers for the worker's compensation settlement, and another set of numbers for the long term disability amounts to a serious procedural irregularity.

To apply a less deferential standard, the court must find that plaintiff has "offer[ed] evidence that 'gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim.'" *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998); *see also West v. Aetna Life Ins. Co.*, 171 F. Supp. 2d 856, 871 (N.D. Iowa 2001) ("when faced with a contention that less deferential review is appropriate the court must decide whether the claimant has offered evidence that gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim.").

**A. Conflict of interest**

"[W]hen an entity funds a plan and is also the plan administrator there is a rebuttable presumption of a palpable conflict of interest." *Tillery v. Hoffman Enclosures, Inc.*, 280 F.3d 1192, 1197 (8th Cir. 2002) (citing *Barnhart v. UNUM Life Ins. Co.*, 179 F.3d 583, 587-88 (8th Cir. 1999)). This rebuttable presumption, however, does not inexorably lead to the conclusion that a palpable conflict of interest in fact exists, or that a heightened standard of review should be applied. *Id.* (citing *Davolt v. The Executive Comm. of O'Reilly Auto.*, 206 F.3d 806, 809-10 (8th Cir. 2000)); *see also Phillips-Foster v. UNUM Life Ins. Co. of America*, 302 F.3d 785, 796 (8th Cir. 2002) (noting that conflict of interest existed due to insurer's status as funding entity, but applying more deferential standard of review).

Defendant's dual role does create such a presumption, however, defendant has rebutted the presumption that the conflict is a palpable one. While the Plan provides that employee participants must make monthly contributions to the fund equal to a set

percentage of their monthly earnings, it also provides that "[t]he contribution levels may be amended from time to time." In that way, defendant can raise premiums and therefore pass on any increased costs to plan participants. *See Woo*, 144 F.3d at 1161 n.2 (noting that "not every funding conflict of interest per se warrants heightened review. . . . an insurer could limit a potential underwriting loss with a retrospective premium, thus decreasing the impact of the financial conflict."). In addition, although defendant presents ameliorative factors, plaintiff does not point to any additional evidence of conflict. *See Morgan v. UNUM Life Ins. Co. of America*, 2002 WL 31095391 (D. Minn. Sept. 16, 2002) (finding no conflict where the only evidence presented was that plan's insurer and administrator were the same, noting "[t]he courts have not been persuaded by these facts alone.").

### B. Procedural irregularity[4]

"Procedural irregularities include denial of a claim without seeking an independent review, failure to properly investigate, or similar failure to use proper judgment." *Queen v. Hartford Life Ins. Co.*, 188 F. Supp. 2d 1141, 1146 (D. Neb. 2002); *see also Conley v. Pitney Bowes, Inc.*, 978 F. Supp. 892 (E.D. Mo. 1997). An example of a procedural irregularity rising to the level required to trigger less deferential review is found in *Woo*, in which the Eighth Circuit held that failing to have an independent medical expert

[4] "Procedural irregularity" is more typically considered in reference to a denial of benefits based on the plan's application of facts to that denial. There is nothing to suggest that the same standards would not apply when the case involves the interpretation of plan language. *See West*, 171 F. Supp. 2d at 874 ("The court agrees that there is some similarity between a failure to **interpret a policy term** in accord with the law applicable to the contract by virtue of a choice-of-law clause, as in this case, and the failure to employ a properly qualified expert to **review a claim** involving an uncommon disease, as in *Woo*.") (emphases added).

review the plaintiff's claim even though there was conflicting medical evidence constituted a procedural irregularity. *See Woo*, 144 F.3d at 1161.

Also instructive are cases in which the court determined that the alleged procedural irregularity was insufficient to invoke the less deferential standard of review. For example, in *West v. Aetna Life Ins. Co.*, part of the dispute centered on the interpretation of the term "accident" in the plan. 171 F. Supp. 2d 856. The plan contained a choice-of-law provision that selected New York law, application of which would have mandated an interpretation favorable to plaintiff. Plaintiff argued that the insurer's decision to ignore New York law was therefore a procedural irregularity. The district court disagreed, reasoning that the impact of a choice-of-law provision is only minimally significant in an ERISA case, because federal common law, rather than state law, controls disputes under ERISA. 171 F. Supp. 2d at 873-74. *See also Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 806-07 (8th Cir. 2002) (determining that the insurer's erroneous reference to an older definition of disability did not amount to a procedural irregularity triggering less deferential review).

In this case, defendant decided to allocate the lump-sum settlement over plaintiff's benefits period, rather than over her lifetime. It is difficult to characterize this decision as equivalent to denial of a claim without seeking an independent review or failure to properly investigate. Defendant claims (and plaintiff does not dispute) that it was aware of the worker's compensation settlement when it decided how to allocate the setoff. It does not appear to be a failure to use judgment — so much as a disagreement about what that judgment was. Plaintiff has not shown a "serious procedural irregularity."

Even if defendant's actions could be considered serious procedural irregularities, "it is only . . . when such irregularities are 'so egregious that the court has a total lack of faith in the integrity of the decision making process' that a court may infer the plan administrator did not exercise proper judgment." *Tillery*, 280 F.3d at 1199 (citing *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2000)). In this case, there is little evidence that would lead the Court to have a "total lack of faith in the integrity of the decision making process." *Id.* Plaintiff does not dispute that she was able to appeal the initial decision, and as noted, she does not dispute that defendant knew about the settlement when it interpreted the plan language. Plaintiff's complaint is not with the process, but with the result. Therefore, the Court finds that there is not a "serious procedural irregularity" from which the Court can infer a failure to exercise proper judgment.

**C. Breach of fiduciary duty**

Even if plaintiff could show "either a palpable conflict of interest or a serious procedural irregularity, [s]he must also show the conflict or irregularity caused a serious breach of [defendant's] fiduciary duty." *Tillery*, 280 F.3d at 1197. The breach of fiduciary duty must be significant. *See id.* The mere denial of benefits, even if the denial is contrary to some medical evidence, does not necessarily qualify as a serious breach. *See Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000). This "second prong presents a considerable hurdle for plaintiffs." *Id.* at 948 (quoting *UNUM Life Ins. Co.*, 179 F.3d at 588 n.9).

In this case, plaintiff alleges that the use of different calculations and numbers in the worker's compensation agreement and the long-term benefit calculation amounts to a breach of fiduciary duty. Even assuming that the Court disagrees with defendant's decision to allocate the lump sum over the benefits period, it is difficult to say that defendant's decision amounts to a **serious** breach of fiduciary duty. The Plan confers discretion on the administrator to interpret all questions, and there is no case law, or language in the plan that would require defendant to allocate the lump sum to plaintiff's lifetime. In addition, it appears that the language in the settlement agreement was an attempt to maximize plaintiff's future social security income (by minimizing the amount attributable to permanent total disability). There is no language in the settlement agreement dictating how the settlement impacts future long-term disability benefits.

In sum, plaintiff has not shown that the Court should apply a less deferential standard of review. The Court does not find evidence of a procedural irregularity or palpable conflict of interest. Even if the Court assumes that there is a conflict of interest, plaintiff has not shown a breach of fiduciary duty sufficient to trigger less deferential review.

## II. Allocation of Lump Sum

### A. Abuse of discretion

"A failure to satisfy the *Woo* gateway requirement to less deferential review may strongly suggest . . . that a plan administrator's decision was not arbitrary and capricious." *Schatz*, 220 F.3d at 950 n.8 (citing *UNUM Life Ins. Co.*, 179 F.3d at 588 n.9). Nonetheless, there are specific factors that should be considered when determining

whether an administrator's interpretation of a plan is reasonable.[5] *Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 777 n.6 (citing *Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992)). These five factors include whether (1) the interpretation is consistent with the goals of the Plan, (2) the interpretation renders any language in the Plan meaningless or internally inconsistent, (3) the interpretation conflicts with the substantive or procedural requirements of ERISA, (4) the plan administrator has interpreted the words at issue consistently, and (5) the interpretation is contrary to the clear language of the Plan. *West*, 171 F. Supp. 2d at 866 (citations omitted).

Applying those factors to this case, the Court finds that the Plan's interpretation is reasonable. First, the goals of the Plan (factor 1) include managing the fund in a manner fair to all employees. Defendant persuasively argues that relying on state specific worker's compensation law, and actuarial data, might result in treating employees with similar disabilities differently. Further, because a goal is to treat employees fairly by maintaining the fund for future beneficiaries, it is not consistent with the goals of the Plan, to award benefits to plaintiff in excess of the "base payment" provided for in the Plan.[6] Defendant points out that if plaintiff's interpretation is accepted, she will receive

---

[5] In contrast, when the Court is reviewing the administrator's evaluation of the facts to determine application of the plan, the five-factor test is not instructive. *Farley*, 147 F.3d at 777 n.6. Instead, a "substantial evidence" standard is applied — if the decision is supported by substantial evidence, it should not be disturbed. *Id.* *But see Tillery*, 280 F.3d at 1199 (applying five factors to determine if plan had "substantial evidence" to deny benefits).

[6] Base payment is the maximum allowed benefit amount and is premised on the employee's preinjury earnings.

total benefits in excess of her base payment.[7] Similarly, a goal of the Plan is to provide replacement funds to beneficiaries, in lieu of what that beneficiary would have received in wages. Benefits are capped based on the employee's prior salary, and the offset language is intended to prevent the possibility of "double recovery" or a windfall to plaintiff. Awards in excess of this base payment, therefore, are inconsistent with the goals of the Plan, as well as with the Plan language in the offset section (factor 5).

Plaintiff argues that the alleged breach of fiduciary duty is inconsistent with the substantive requirements of ERISA (factor 3), because ERISA requires loyalty to plan participants. ERISA, however, also requires loyalty to future beneficiaries, and administrators have fiduciary obligations to manage funds effectively. Defendant has not interpreted this provision inconsistently in the past (factor 4). *See Tillery*, 280 F.3d at 1200 (finding fourth factor in favor of insurer where insurer had not previously interpreted plan language). Finally, the Plan is silent on how allocation is to occur, so this interpretation is not contrary to the Plan's clear language (factor five).

**B. "Sliding Scale"**

The Court would reach the same result under the less deferential sliding scale review.[8] The same factors are relevant under a sliding scale approach, but "the weight of

---

[7] Calculated by assuming that plaintiff earns 5% per annum interest on the lump-sum worker's compensation settlement, and adding that amount to plaintiff's proposed long-term disability payments and her social security benefits.

[8] The sliding-scale approach was announced in a case in which the Court was reviewing whether the insurer had an adequate factual basis to deny benefits. Here, the Court reviews the insurer's interpretation of its plan, not the factual basis for the denial. "The Eighth Circuit Court of Appeals does not appear to have applied the 'sliding scale' approach to review of an

(Footnote continued on next page.)

each factor in the five factor test favoring the administrator's interpretation of the plan must increase in proportion to the seriousness of the conflict or procedural irregularity." *West*, 171 F. Supp. 2d at 874. Put another way, "the evidence supporting the plan administrator's decision must increase in proportion to the seriousness of the conflict or procedural irregularity." *Woo*, 144 F.3d at 1162. Where the insurer's conduct is "egregious," the insurer's decision will not be upheld unless the record contains substantial evidence "bordering on a preponderance." *Id.*

Defendant's decision cannot be characterized as "egregious." Defendant did award plaintiff benefits, though less than plaintiff would have liked. Plaintiff cannot point to Plan language requiring or suggesting that prior settlements must be considered when the Plan determines how to allocate lump sum benefits. The evidence required under the sliding scale approach, therefore, is something less than a preponderance.

Incorporating the above discussion, the Court finds the factors sufficiently weighted toward defendant, even under the less deferential sliding scale review. As noted, the Court finds that even if defendant's decision amounts to a breach, it was not a significant one. Therefore, the Court finds that defendant has shown a sufficient basis to interpret the allocation provision in the Plan as it did.

---

(Footnote continued.)
administrator's interpretation of a plan." *West v. Aetna Life Ins. Co.*, 171 F. Supp. 2d 856, 874-75 (N.D. Iowa 2001) (collecting cases and finding that "the question of whether proof of a conflict of interest or procedural irregularity on the part of the plan administrator invokes only less deferential 'sliding scale' review for 'abuse of discretion,' or instead invokes *de novo* review, is not altogether settled in this circuit" but not deciding the precise level of review because the same result would have been reached under any standard). Neither party argues in this case that the appropriate level of review is *de novo*. The Court would have reached the same result under a *de novo* standard.

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment [Docket No. 22] is **DENIED**;

2. Defendant's motion for summary judgment [Docket No. 24] is **GRANTED**; and

3. Plaintiff's amended complaint [Docket No. 9] is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 26, 2003
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge